OPINION OF THE COURT
PER CURIAM:
The Petitioner has filed a Petition for Declaratory Judgment regarding the General Assistance Fund (hereinafter GAF), a line item in the Council’s section of the 2004 Comprehensive Budget Act. Petitioner asks this Court to decide whether it is constitutional for individual Council members to expend tribal funds in that, member’s sole discretion, absent full council authorization of the expenditure.
In that attached brief, Petitioner raises two additional constitutional questions: (1) whether the GAF violates the separation of powers doctrine; and (2) whether the GAF’s expenditures comport with equal protection considerations.
The Respondent Council argues that the GAF has been operated by the Council for over 18 years and that the GAF Is now operated under objective guidelines approved by the Executive Finance Committee of the Tribal Council. Further, Respondent argues that the separation of powers doctrine is not violated because the Principal Chief has ultimate responsibility in the administration of the Fund. The Respondent also filed a trial brief asserting that, based upon prior GAF litigation, collateral estoppel and stare decisis should apply to preclude any further ruling on the separation of powers issue.
This Court assumes jurisdiction under Article VII of the Cherokee Nation Constitution for the limited purpose of discussing the constitutionality of the GAF in present form. Presently the GAF is a line item in the 2004 Comprehensive Budget that would operate under guidelines prescribed by a committee. There is no legislation creating the GAF other than a line item in the Comprehensive Budget.
Recent History of the GAF
The GAF has been a source of contention between the legislative and executive branches for several months. Earlier this year, in Thornton v. Smith, JAT-03-11, we reviewed the action of the Principal Chief in abruptly suspending payments from the 2003 GAF. The Principal Chiefs action appeared to have been prompted, at least in part, by the discovery of possible questionable expenditures from the GAF. From the limited record presented, we agreed that GAF was not immune to abuses and lacked guidelines. We also found that both branches were “genuinely fulfilling their respective duties” and recom *82 mended in the proceedings that a political solution be pursued by the respective branches.
In Thornton, we answered the narrow question of whether the Principal Chief could unilaterally freeze all funds from the GAF once the 2003 Comprehensive Budget was executed into law. Wre unanimously held that he could not. To allow the Principal Chief to unilaterally stop all payments from a portion of a Comprehensive Budget would be an inappropriate line item veto. In Thornton, we did not specifically address whether individual members of the Couneil could lawfully make expenditures under the GAF. We simply held that the Council complied with the general requirements of Article X, § 7 of the Cherokee Constitution by passing the Comprehensive Budget and that the line item labeled “General Assistance Fund” was descriptive enough to state an adequate purpose as required by the Constitution. Accordingly, we allowed expenditures from the 2003 GAF to continue through that budget year only. The method by which the GAF operated was not a primary consideration of the Court in Thornton. Given the long history of the GAF, we strongly suggested in Thornton, that the legislative and executive differences over the GAF would be best resolved in the political process. Differences unresolved,: the Council passed the 2004 Comprehensive Budget approved by the Principal Chief, but placed a moratorium on GAF distributions pending this Court’s determination of the GAF’s constitutionality. The moratorium was a commendable political compromise between the branches that assured continuation of governmental operations under an approved budget. In conjunction with the 2004 Budget, the Executive Finance Committee of the Council passed a set of guidelines for the approval of claims under the GAF.
Unfortunately, the legal effect of the moratorium is to place this Court in a position of being asked to rule on the constitutionality of a law that is not presently in effect. Ripeness considerations abound, but in the interest of efficiency, and sensitive to our own obligation to avoid exercising legislative authority, the Court will proride the following guidance:
Legislative Authority
The Legislative Branch is given broad powers within the constitutional framew'ork, to “establish law's which it shall deem necessary and proper for the good of the Nation .. .’’Art. V, § 7, Cherokee Constitution (1976). It is clearly within the pow'er of the Council to pass a law' establishing a GAF. The problem is, the Council has never passed legislation establishing a GAF aá a program. The Council has merely placed the GAF as a line item in successive budgets without challenge from past administrations. The Council has operated the GAF unchecked for several administrations without written guidelines, definitions for eligibility, restrictions on the use of funds, or other parameters.
During the commendable negotiation process that led to the 2004 Comprehensive Budget, the Executive Finance Committee implemented guidelines that attempt to outline the GAF as a program. How'ever, guidelines of a Council Committee do not constitute legislation and provide a “law” for the executive branch to faithfully execute.
Separation of Powers
Article IV of the Cherokee Constitution provides for “distribution” of powers in the three branches of government. Although similar to the federal separation of pow'ers doctrine, the analogy is not perfect. The only prohibition against power in the Cherokee Constitution is that neither *83 branch “exercise the powers properly belonging to either of the others.” Art. IV, Cherokee Constitution (19.76).
Under the Cherokee “distribution of powers” clause, there must be exclusive authority in one branch of government in order to preclude the other two branches from exercising authority. We find no exclusive constitutional authority, as the Petitioner contends, that the executive branch is the only body that may request distribution of funds. The Cherokee Constitution provides exclusive authority in the Principal Chief to “faithfully execute” the laws of the Cherokee Nation and “conduct in person and in such manner as shall be prescribed by law, all communications and business of the Cherokee Nation....” Art. VI, § 10 Cherokee Constitution (1976). Request for payments from the other branches do not infringe on the Principal Chiefs exclusive authority.
There are, however, constitutionally created cabinet positions in Article VIII, in certain subject areas such as health, education, and welfare, commerce and communications. The Council should be mindful in crafting legislation, that such subject areas are not infringed upon and narrowly tailor future legislation to avoid duplicity.
It was also noted at oral argument that the executive branch proposes a new “immediate assistance program” as a solution to this matter. The executive branch must be mindful that the Constitution requires Council approval for “any donations by gift, or otherwise, to any individual, firm, company, corporation or association.” Art. X; § 7 Cherokee Constitution (1976).
At oral argument, Respondent Council argues that there is no separation of powers violation because the Principal Chief has ultimate authority to decide whether to issue the checks drawn on the GAF. We agree. But if this proposition is to be given validity, there must be a law in place for the executive branch to execute. Otherwise, the executive branch will be forced to exercise the same discretionary powers that the Council purports to reserve to itself through the operation of the fund. If the legislative branch passes appropriate legislation establishing the GAF, the executive branch may then provide appropriate review of the payment request to see that it complies with the requirement set forth by the Council in the GAF legislation.
Equal Protection
The Petitioner argues that the GAF violates equal protection guarantees because it gives special treatment to certain individuals or groups. We disagree. Numerous social welfare programs in this Nation and in other jurisdictions provide assistance to individuals and groups through grants, public assistance, and other monetary relief. At oral argument, the GAF’s present manifestation was described as being available to all Cherokee citizens and groups that are made up, at least in part, by a critical mass of Cherokee citizens. However, as noted above, this Court cannot complete a meaningful.equal protection analysis absent legislation that clearly defines eligibility.
Classifications based on financial need are typically not considered a suspect class for equal protection analysis. So long as legislation sets forth a rationale basis for the aid, equal protection considerations will not prohibit the fund.
Conclusion
We hold that the GAF is unconstitutional in present form because there is no legislation establishing a program. We note, however, that it is within the Council’s authority to pass legislation establishing a GAF whereby individual council members submit request for payment. As *84 we held in Thornton, “once a law is passed establishing a fund for a stated purpose, it is not necessary that every single expenditure to every individual or entity receive a separate vote of the full Council.” If such legislation becomes effective, the executive branch shall see that the legislation is faithfully executed.